WILLIAM YOUMANS, Appellant, v. ANN ELIZA EDGERTON, as Administratrix, etc., Respondent.

S. and K. entered into a contract for the sale by the former, and purchase by the latter, of certain premises, the purchase-price to be paid by install-ments; S. to convey, "by good and sufficient deed," when all the pur-chase-money was paid. K. entered into possession under the contract; S. assigned the contract for full value to E., defendant's testator; K. as-sented thereto, and after making a payment upon the contract to E., as-signed his interest therein to H., who paid the balance and then demanded of E. a deed or re-payment of the moneys paid. The title to the land was not in fact in S. and he, when the last payment was made, was insol-vent. *Held* (EARL, J., dissenting), that in the absence of any proof of fraud or bad faith, an action was not maintainable against E. to recover back the money paid; that the assignment to E. transferred no title to the land and imposed upon him no obligation; that the money he received was actually due to him, and that there could be no obligation to refund it; that plaintiff's remedy was by action against S.

*Smith* v. *McCluskey* (45 Barb. 610), so far as this point is concerned, ques-tioned.

The referee found that at the time of payment the parties were ignorant that the title was not in S. *Held* immaterial; that the mistake did not create any obligation on the part of E.

(Submitted January 28, 1883; decided March 6, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made September 3,

1878, which reversed a judgment in favor of plaintiff, entered upon the report of a referee, and granted a new trial. (Reported below, 16 Hun, 28.)

This action was brought originally against Apollos C. Edgerton, to recover back moneys paid upon a contract for the sale of lands. Edgerton died during the pendency of the appeal to this court, and the present defendant, his executrix, was substituted. The following facts appeared and were substantially found.

On the 2d day of February, 1867, one James R. Shaver entered into a contract with one Kilmer to sell him lots Nos. 10 and 11 in great lot No. 37 in Hardenburgh Patent, each lot consisting of one hundred and two acres of land, for the sum of $1,500, payable in installments, with annual interest; and when the whole sum of $1,500, with interest, should be paid, Shaver agreed to execute and deliver to Kilmer a quitclaim deed of lot No. 10, and "a good and sufficient deed" of lot No. 11. On the 1st day of March, 1867, Kilmer paid $200, as provided in the contract, and took possession of the lands therein mentioned. At the time of making that contract, and for many years prior thereto, one Charles Knapp was the owner in fee-simple of lot No. 11. On the 24th day of June, 1859, he entered into a written contract with one Townsend Shaver, by which he agreed to sell to him that lot for $600, payable $100 annually. Under that contract Shaver entered into possession of the lot, but he did not pay any part of the purchase-price. On the 5th day of May, 1864, Townsend Shaver entered into a written contract with James R. Shaver, whereby he agreed to sell lot No. 11 to him for the sum of $1,097.34, payable in installments. James R. Shaver entered into possession of the lot under that contract, and continued to occupy it until he made the above-mentioned contract with Kilmer in February, 1867. There is no evidence that James R. Shaver ever made any payments upon his contract, and he had no other title to or interest in lot No. 11 than such as was acquired by the contracts of purchase just mentioned. At the time of the contract between Townsend Sha-

ver and James R. Shaver, Townsend was in default upon his contract with Knapp. On the 11th day of April, 1867, James R. Shaver, for a valuable consideration, sold and assigned his contract with Kilmer, by a written assignment, to said Apollos C. Edgerton, of which the following is a copy: " For value received, I hereby sell, assign, transfer and set over to A. C. Edgerton all my interest in the within contract for his own use and benefit," and at the same time he delivered the contract, with the assignment, to Edgerton, who took the assignment in good faith, and paid full value therefor. Afterward Edgerton collected from Kilmer the sum of $200. On the 20th day of April after, Kilmer sold and assigned his interest in the contract to one Hodge for a good and valuable consideration, and authorized and empowered him to receive the deed covenanted to be given in the contract, and delivered the assignment and contract to him. Hodge thereafter paid Edgerton at different times installments in all making up the full amount due under the contract, the last payment for $107 being made on the 10th day of June, 1874. All the payments made by Kilmer or Hodge, except the last, were made by them and received by Edgerton in ignorance of the fact that Knapp held the title to lot No. 11, and under the mutual supposition and belief that at the time James R. Shaver entered into the contract with Kilmer he had a good and perfect title to all the lands described in the contract. At the time of the last payment, both Hodge and Edgerton knew that Knapp had the title to lot No. 11. At the time of making the last payment Hodge demanded of Edgerton a deed of the premises in pursuance of the contract, which he refused to give, and Hodge then demanded back the money paid by him to Edgerton on the contract, and he refused to pay the same or any part thereof. Soon after Edgerton took the assignment of the contract from Shaver he notified Kilmer that he had the contract, and that payments must be made to him. Kilmer assented to the transfer and proceeded to make the payments; and this Hodge knew before he took the assignment from Kilmer. At the time of the assignment of the contract from Kilmer to Hodge,

Kilmer agreed to pay Hodge $200 and the amount that Hodge should pay, and he, Kilmer, was to continue in possession of all of the premises, which he did until some time in 1873, when he abandoned the same, and he did not pay Hodge any amount whatever. During the time he occupied the premises, however, he built a house on lot No. 11. After he abandoned the premises they were occupied by one Bryden, under Hodge, about one year, and until the spring of 1874. On the 15th day of April, 1874, Hodge entered into a written contract with Wilson and Keeler, by which he agreed to sell them both the lots Nos. 10 and 11 for the sum of $1,700, payable in installments. Wilson and Keeler took possession under the contract, and continued to occupy and possessed them until the fall of 1874, when they agreed with Hodge to abandon the premises, and did abandon them, and they remained vacant and unoccupied until after the commencement of this action, which was the 1st of March, 1875. Soon after the above arrangement between Hodge and Wilson and Keeler, Hodge notified Edgerton that the premises had been abandoned, and offered to surrender them to him, and to cancel his contract, and again demanded a deed of the premises or the payment of the money paid by him to Edgerton on the contract, with each and all of which Edgerton refused to comply. On the 17th of December, 1874, Hodge, for a valuable consideration, sold and assigned to the plaintiff in this action the contract between James R. Shaver and Kilmer, and all causes of action, claims or demands, whether at law or in equity, against Edgerton for damages arising from the breach of the contract, the receipt of moneys, thereon or failure to execute a deed in pursuance thereof. On the 27th of January, 1875, Kilmer, for a good and valuable consideration, by written assignment, sold and assigned to the plaintiff all causes of action, claims and demands against Edgerton growing out of the receipt of the moneys thereon by Edgerton.

*W. & G. W. Youmans* for appellant. A contract for the sale of lands may be rescinded, and purchase-money, paid in ad-

vance by one party, may be recovered back on the failure of the other to perform, even though the former could not have performed. But neither party can in such case recover damages for a breach of the contract. (*Bigler* v. *Morgan*, 77 N. Y. 312, 318; *Margraf* v. *Muer*, 57 id. 155–159; *Tice* v. *Zinsser*, 76 id. 549–562; *Corkaoft* v. *N. Y. & H. R. R. Co.*; 69 id. 201.) The vendee was under no obligation to pay his money to the vendor, and trust to a remedy by action for damages, in case the latter should fail to remove the incumbrances. (*Morange* v. *Morris*, 3 Keyes, 48; *S. C.*, 32 How. 178; *Hartley* v. *James*, 50 N. Y. 38; *Pumpelly* v. *Phelps*, 40 id. 59–67.) Defendant, taking the contract subject to the equities between the parties, stands in Shaver's place, and under the facts in this case is liable to the plaintiff for all moneys paid to him (the defendant) upon such contract. (*Curtiss* v. *Guild*, 57 N. Y. 229; *Blydenburgh* v. *Thayer*, 1 Abb. Ct. of App. Dec. 156; *Ingraham* v. *Disburgh*, 47 N. Y. 421; 1 Wait's Act. and Def. 366; 4 id. 483–508; 5 id. 513; *Kingston B'k* v. *Eltinge*, 40 N. Y. 391; *Martin* v. *McCormack*, 8 id. 331; *Granger* v. *Allcott*, 1 Lans. 164; *Gardner* v. *Mayo*, 26 Barb. 423; *Butler* v. *Livermore*, 52 id. 570–579.) The covenant in the contract from James R. Shaver to Kilmer, providing for the giving "a good and sufficient deed," calls for something more than a deed sufficient, merely, in point of form; it implies an operative conveyance sufficient to vest good title in the grantee. (*Delavan* v. *Duncan*, 49 N. Y. 485; *Story* v. *Conger* 36 id. 673; *Clute* v. *Robison*, 2 Johns. 595; *Judson* v. *Wess*, 11 id. 525; *Everson* v. *Kirtland*, 4 Paige, 628; Kingsley's Cowen's Treatise, § 307; 40 N. Y. 391–395; Moak's Van Santvoord's Pleadings, 380; *Fletcher* v. *Button*, 4 Comst. 396; *Lawrence* v. *Taylor*, 5 Hill, 107; *Canal B'k* v. *B'k of Albany*, 1 id. 287; *Waite* v. *Leggett*, 8 Cow. 95; *Smith* v. *McClusky*, 45 Barb. 610–615; *Langley* v. *Warner*, 3 N. Y. 327; 11 Metc. 248; *Clark* v. *Pinney*, 6 Cow. 297; *Stevens* v. *Austin*, 1 Metc. 558; *Pease* v. *Pettis*, 47 Barb. 276; *Kinney* v. *Kernan*, 49 N. Y. 169–172; *Morange* v. *Morris*, 32 How. 178.)

*O. W. Smith* for respondent. If Shaver did not or could not give a good and sufficient deed then the action against him would be on the breach of contract, not on any implied warranty for failure of consideration. (16 Hun, 30; *Mark* v. *McGlynn*, 88 N. Y. 357; *Matter of Ross*, 87 id. 514; *Davis* v. *Clark*, id. 623; Code, § 1337; *Vrooman* v. *Turner*, 69 N. Y. 280, 285; *Lawrence* v. *Cox*, 20 id. 268; *Deming* v. *Leavitt*, 85 id. 30, 35.) This action will not lie until a demand and refusal are shown. (*Fuller* v. *Williams*, 7 Cow. 53; 6 id. 13; *Parker* v. *Parmelee*, 20 Johns. 130; *Dowden* v. *McCullom*, 59 N. Y. 373; *Camp* v. *Morss*, 5 Denio, 161; Sugden on Vend. [8th Am. ed.] 358; *Bumpser* v. *Platner*, 1 Johns. Ch. 218.) Where both parties are innocent of any fraud there is no legal liability; the purchaser takes title at his own risk in such cases. (*Whittemore* v. *Farrington*, 76 N. Y. 457; *Bates* v. *Delevan*, 5 Paige, 307; *Burrill* v. *Jackson*, 9 N. Y. 535; *Whittemore* v. *Farrington*, 12 Hun, 349; affirmed, 76 N.Y. 452.) The plaintiff is estopped from recovering back this money from defendant. (*Lee* v. *Porter*, 5 Johns. Ch. 268; *Taplin* v. *Wilson*, 4 Hun, 244; *N. Y. & N. H. R. R.* v. *Marsh*, 12 N. Y. 308; 2 Sandf. 475; 22 Barb. 260.) The money having been paid by Hodge in settlement and compromise of the litigation then pending, in favor of the defendant, against Kilmer, before the county judge, cannot be recovered back. (*Graves* v. *Friend*, 5 Sandf. 568; *Russell* v. *Cook*, 3 Hill, 504; Chitty on Cont. 43, 44; *O'Keason* v. *Barclay*, 2 Penn. 531; *Crans* v. *Hunter*, 28 N. Y. 389; *Stewart* v. *Abrenfeldt*, 4 Denio, 189; *Seaman* v. *Seaman*, 12 Wend. 381; 32 Barb. 256; 35 id. 641; 4 Denio, 180; 1 Bouv. Inst. n. 798–9.) When the contract was paid by Hodge, such payment having been made voluntarily, without any objection or protest to the defendant, who was authorized to receive such payment, and who was the legal *bona fide* owner, the money cannot be recovered back. (*N. Y. & Harlem R. Co.* v. *Marsh*, 12 N. Y. 308; *Silliman* v. *Wing*, 7 Hill, 159; 2 Denio, 26; 11 How. 526; 28 N. Y. 394; 2 Sandf. 475; 3 Hill, 504; 4 Denio, 189; *Taplin* v. *Wilson*, 4 Hun, 248.)

Where the parties are equally innocent or equally negligent, the one paying cannot recover from the other. (76 N. Y. 452; 12 Hun, 349; Willard's Eq. Jur. [Potter's ed.] 72; *Elting* v. *B'k of U. S.*, 11 Wheat. 59; *Wyman* v. *Farnsworth*, 3 Barb. 369; 1 Story's Eq. Jur. 150; 1 Fonbl. Eq., B. 1, chap. 2, note 5; 1 Powell on Con. 200; Willard's Eq. Jur. 72; 1 Story's Eq. 151; *Davis* v. *Morris*, 36 N.Y. 569, 574; Shearm. & Redf. on Neg. 34; 34 Iowa, 568.) Before plaintiff can recover he must show an eviction or actually surrender the premises to defendant. (*Allerton* v. *Allerton*, 50 N. Y. 670; *Gale* v. *Nixon*, 6 Cow. 445; *More* v. *Smedburgh*, 8 Paige, 600; *S. C.*, 4 Wend. 238; *Tompkins* v. *Hyatt*, 28 N. Y. 347; *Viele* v. *T. R. R. Co.*, 20 id. 184; *Coray* v. *Matthewson*, 7 Lans. 80; 7 Johns. 122; 5 Cow. 195; 11 Johns. 122; 9 Wend. 80; 13 Barb. 230; 23 id. 461.)

DANFORTH, J.    Under the contract from James R. Shaver to William T. Kilmer, the latter at once took possession of lots 10 and 11, and on the payment, to Shaver, of installments, in all amounting to $1,500, was to receive from him a quitclaim deed of lot 10, and a good and sufficient deed of lot 11. This contract was assigned by Shaver to the defendant's testator, A. C. Edgerton, and he collected from Kilmer $200, part of the money due thereon. Afterward Kilmer transferred his interest in the contract to one John Hodge, who paid Edgerton at different times, and in all the balance of the money called for by the contract, and then demanded of him a deed or repayment of the money so paid, and being refused, assigned to Youmans all rights of action which had accrued to him against Edgerton. Kilmer also assigned to him any claim which he might have growing out of these matters. One Knapp was at all times the legal owner of lot 11, and Shaver held under a land contract from him. The plaintiff brought this action for the moneys paid by Hodge and Kilmer to Edgerton. There has been no express promise by Edgerton, and the action, if supported at all, must be founded on an implied one. I cannot find even *prima facie* evidence of this. The assignment by Shaver to Edgerton did not, nor did it pur-

port to, transfer any right in the land, or impose upon him any obligation. It was a mere authority to receive the moneys called for by its terms and apply them to his own use. With notice of this limitation, the party paying the money is chargeable. The plaintiff's case is, therefore, not different from what it would have been, if, as each payment became due, Shaver had given, for value, an order on the vendee to pay the same to Edgerton, or an assignment in form of each separate installment. In neither case could the debtor, if he accepted the order, or assented to the assignment, set up in defense of payment any equity between himself and the assignor, nor after payment recover back the money upon showing even such equity as would have been a defense as between himself and the assignor. Nor is there any equity in the plaintiff's favor. Kilmer's promise to pay Shaver was in consideration of Shaver's promise to him, and the actual possession of the land. Hodge paid in consequence of a consideration moving from Kilmer, and Shaver's assignment of Kilmer's promise, was fully paid for by Edgerton. The plaintiff relies upon the doctrine that an action may be maintained against an agent who receives money to which his principal has no right, but if that doctrine applies at all, its qualification protects the defendant. The qualification is that the money is still in the agent's hands, not yet paid over to the principal. (*Holland* v. *Russell*, 1 Best & Smith, 424; *Zychlinski* v. *Maltby*, 14 C. B. [N. S.] 322.) Here the money was paid by Edgerton before it was received from the plaintiff's assignors, and they paid Edgerton because he had acquired the right to it, not as agent, but as owner. It is also urged that the assignee of Shaver obtained no better right to receive the money than Shaver had. But his right in this respect was good enough. The promise to pay the installment was not induced by any fraud, nor was it dependent upon a promise to give a title. His inability to do so now is the only equity relied upon by the plaintiff, but that had not arisen at the time of the assignment, nor could it have been insisted upon when the installments matured, nor at the time they were in fact paid. Shaver himself might have

sued for each as it came due and succeeded, although had he waited until the whole purchase-money was due, the case might have been different. (*Beecher* v. *Conradt*, 13 N. Y. 108.) The defendant stood in his place, and although subject to the same equities as his assignor, they are those only which were available at the time of the assignment (*Myers* v. *Davis*, 22 N. Y. 489), and even these might be released or waived by the person entitled to them, either expressly or by implication arising from his conduct ; and although there has been here no release in words, the acts of the plaintiff's assignor are equally conclusive. Kilmer assented to the assignment by Shaver, and both Kilmer and Hodge made promise of payment, and then payment to the defendant of the moneys which have been allowed by the referee against him. There is no principle upon which the recovery can stand, and the only case cited by the appellant, which at all sustains it, is *Smith* v. *McCluskey* (45 Barb. 610). That case, however, is not only opposed to the views already expressed, but the judgment now before us shows that it has not been followed, even by the court which made it (16 Hun, 28), and upon the point now involved, we think, the last stands upon a better interpretation of the law. It is contended, however, by the appellant that the referee's finding may be supported upon the ground that at the time of payment, all parties were ignorant that the title was in Knapp and not in Shaver. But this is not material. This mistake did not create a supposed legal obligation. The obligation was expressed in the contract. If Shaver and not Knapp had the title, that fact would in no respect have given Edgerton a right against Kilmer or Hodge, nor would it have added to their duty to observe the terms of the contract. It might have made it more desirable for them to do so, but that is not sufficient. (*Aiken* v. *Short*, 1 H. & N. 210.) Upon the facts found by the referee, the plaintiff might have an action against Shaver for breach of contract, or by suit for specific performance, but none against Edgerton, either upon legal or equitable grounds ; the money which he got was actually due to him, and there can be no obligation to refund it.

It follows that the judgment entered upon the report of the referee was properly reversed — that the order of reversal and for a new trial should be affirmed, and by reason of the plaintiff's stipulation, the defendant have judgment absolute, dismissing the complaint, with costs.

All concur, except EARL, J., dissenting.

Order affirmed and judgment accordingly.